IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:12-CR-252 |
| vs. | |
| MICHAEL A. SMITH, | MEMORANDUM AND ORDER |
| Defendant. | |

    This matter is before the Court on the defendant Michael A. Smith's Motion to Suppress (filing 17) and the Findings and Recommendation and Order (filing 28) of United States Magistrate Judge F.A. Gossett. The order incorporated the findings made by Judge Gossett at the hearing on Smith's motion, *see* filing 31 at 36–43, and recommended that the motion to suppress be denied. Also before the Court is Smith's objection to the Magistrate Judge's order (filing 32). The Court has conducted a de novo review of Smith's motion to suppress, pursuant to 28 U.S.C. § 636(b)(1). For the reasons discussed below, the Court finds Smith's objection is without merit, adopts the findings of the Magistrate Judge, and denies Smith's motion to suppress.

**FACTUAL BACKGROUND**

    Smith is charged with one count of illuminating an aircraft with a laser, in violation of 18 U.S.C. § 39A. The statute makes it an offense to knowingly aim the beam of a laser pointer at an aircraft. § 39A(a). At the hearing on Smith's motion to suppress, the Magistrate Judge received testimony from Smith and Chris Meztista, an FBI agent who worked as a liaison between the FBI and aviation authorities.

    On the morning of July 11, 2012, a Boeing 737 aircraft was flying into Eppley Airfield in Omaha, when the cockpit was illuminated by a green laser. Filing 31 at 13. The airfield notified the Omaha Police Department, which dispatched a police helicopter in the direction of the laser. While the helicopter was approaching the source of the light, it was illuminated three separate times by a green laser. The officers in the helicopter used its camera system to identify the position of the light source, and relayed that information to Douglas County Sheriff's deputies on the ground. Filing 31 at 14.

A deputy sheriff arrived at Smith's residence and observed him standing in the grass of his backyard, shining a green laser pointer into the sky. Filing 31 at 14, 16, 17. By then, the helicopter was heading away from Smith's house. Filing 31 at 25. The officer entered Smith's backyard, handcuffed him, and walked him to the front of the house to question him. Filing 31 at 17. After being read his *Miranda* rights, Smith admitted shining the laser at various aircraft, but explained that he did not think the light would actually reach the aircraft. Filing 31 at 18.

In the following weeks, Meztista and an agent from the law enforcement division of the Transportation Security Administration arranged to meet Smith. Filing 31 at 18–19. On August 6, 2012, Smith met with the agents at his house. Smith was again informed of his *Miranda* rights and agreed to speak with the agents. Filing 31 at 20. Smith admitted that on July 11, he had been on his back deck, pointing the laser at various things. Filing 31 at 20–21. When he heard the helicopter approaching, he stepped out into his yard to get a better view. Filing 31 at 21.

At the hearing on Smith's motion to suppress, he and Meztista described the layout of Smith's house. It was located in a typical suburban development. Filing 31 at 22. The backyard had grass and a deck with a table, chairs, and grill. Filing 31 at 22–23, 30. Other houses stood to the left and right of Smith's house, and there were fields in the back. Filing 31 at 30. To access the backyard from the street in front of the house—as the deputy sheriff did—it was necessary to walk between Smith's house and the neighboring house. Filing 31 at 30–31.

## ANALYSIS

Smith does not dispute that police had probable cause to arrest him for a violation of 18 U.S.C. § 39A. Rather, Smith contends that because he was arrested within the protected curtilage of his house (his backyard), the Fourth Amendment required something more than probable cause.

"The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend IV. This protection extends to the curtilage surrounding a home, which is the area "'to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes.'" *United States v. Wells*, 648 F.3d 671, 675 (8th Cir. 2011) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). Consequently, curtilage is generally treated the same as the home itself. *Id.* Magistrate Judge Gossett found that the area of the backyard where Smith was arrested qualified as part of the curtilage of Smith's house. The government does not dispute this finding, and the Court

adopts it. *See Wells*, 648 F.3d at 677 (setting forth factors used to determine if area qualifies as curtilage).

In order to enter the home or curtilage to arrest a suspect, police must have either a warrant, consent, or probable cause coupled with exigent circumstances. *United States v. Clarke*, 564 F.3d 949, 959 (8th Cir. 2009). There was no warrant or consent in this case; so the entry into Smith's yard may only be upheld if the police had both probable cause to arrest Smith and exigent circumstances justifying immediate entry into Smith's yard. As noted above, Smith does not dispute there was probable cause for his arrest, so the sole question is whether exigent circumstances were present.

Under the exigent circumstance exception to the warrant requirement, police may take immediate action if a suspect's escape is imminent, evidence is about to be destroyed, or there is a reasonable concern for the safety of law enforcement officers or others. *Clarke*, 564 F.3d at 959; *United States v. Poe*, 462 F.3d 997, 1000 (8th Cir. 2006); *United States v. McConnell*, 903 F.2d 566, 569–70 (8th Cir. 1990). The government argues that the entry into Smith's curtilage was justified by a reasonable fear that if Smith continued to shine his laser pointer at aircraft, it could endanger the lives of those onboard. Smith counters that because the helicopter was already flying away when police arrived, and because Smith was no longer pointing the laser at aircraft, any threat of harm had lapsed and the police should have obtained a warrant before arresting him. The Court finds Smith's argument unpersuasive, and finds that law enforcement officers acted reasonably in arresting Smith without first obtaining a warrant.

"Exigent circumstances exist if an objectively reasonable officer on the scene would have sufficient grounds to believe an exigency existed." *Poe*, 462 F.3d at 1000. When the deputy sheriff arrived, Smith was still out in his yard, pointing his laser toward the sky. There was no reason to believe Smith would stop while the police obtained a warrant.

A reasonable officer on the scene could also have found that Smith's conduct posed a continuing threat to the safety of those onboard any aircraft he harassed with his laser pointer. A reasonable officer would have been aware of the danger to pilots posed by laser pointers. Not surprisingly, being struck by a laser may impair pilots' vision, by causing glare or even flash blindness (a temporary loss or severe reduction of vision). V.B. Nakagawara & R.W. Montgomery, Civil Aeromedical Institute, Federal Aviation Administration, *Laser Pointers: Their Potential Affects* [sic] *on Vision and Aviation Safety* 1-2, https://www.hf.faa.gov/docs/CAMI/0107.pdf (2001) (last accessed February 15, 2013). This can force pilots to divert their eyes from their flight or landing path, startle them, and reduce their ability to observe obstacles, such as power lines. *Id.* at 4–5.

Smith argues that there is insufficient proof of exigent circumstances because the government did not present evidence of the effects of laser pointers on pilots, or that an aircraft had ever crashed because it was illuminated by a laser pointer, or that any of the pilots affected by Smith's laser pointer felt threatened. But such evidence was not necessary in this instance. An officer could reasonably have believed that a laser pointer powerful enough to be detected by two separate aircraft on several occasions could adversely affect the crew of those aircraft. And the dangers posed by distracted or temporarily blinded pilots is self-evident.

Smith had already risked the lives of those onboard a passenger jet and a helicopter. The police do not have to wait for him to endanger more lives. If, for example, Smith had been firing a rifle across a highway, no one would think it unreasonable for the police to arrest him without first obtaining a warrant. In fact, under either scenario, police would have acted unreasonably if they had allowed Smith to continue endangering the lives of others. The Court finds that exigent circumstances supported the entry into Smith's curtilage, and his motion to suppress should be denied. *Cf. Bing ex rel. Bing v. City of Whitehall, Ohio,* 456 F.3d 555, 558–60 (6th Cir. 2006) (exigent circumstances found where man had been outside his home, firing a gun into the air and the ground near his home, and then retreated into his house, still armed, and refused police's numerous orders to exit).

Accordingly,

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation and Order (filing 28) are adopted.

2. Smith's objection (filing 32) to the Magistrate Judge's Findings and Recommendation is overruled.

3. Smith's motion to suppress (filing 17) is denied.

Dated this 19th day of February, 2013.

BY THE COURT:

John M. Gerrard
United States District Judge