IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:12-CR-252 |
| vs. | |
| MICHAEL A. SMITH, | TENTATIVE FINDINGS |
| Defendant. | |

The Court has received the revised presentence investigation report (PSR) in this case. Smith has filed several objections to the report. Filing 95. He has also moved for a downward departure on the basis that his Criminal History Category under the Sentencing Guidelines overstates the seriousness of his criminal record. Filing 98. Finally, Smith has moved for a variance from the Guidelines sentencing range. Filing 99.

IT IS ORDERED:

1.  The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005), and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a)  give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b)  resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

    (c)  impose upon the United States the burden of proof on all Guidelines enhancements;

    (d)  impose upon the defendant the burden of proof on all Guidelines mitigators;

    (e)    depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

    (f)    in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.    Smith has filed several objections to the presentence report. Filing 95. He first objects to the report's use of U.S.S.G. § 2A5.2 as the applicable guideline, arguing that it is not sufficiently analogous to his offense of conviction, aiming a laser pointer at an aircraft, 18 U.S.C. § 39A. The Court tentatively finds that this objection lacks merit. Presently, there is no guideline referenced to § 39A. Therefore, under U.S.S.G. § 2X5.1, the Court is to apply the most analogous offense guideline. If there is no sufficiently analogous guideline, then the Court must apply the provisions of 18 U.S.C. § 3553, together with any guidelines or policy statements that provide meaningful guidance. § 2X5.1.

Part 2A5 of the Guidelines addresses air piracy and offenses against mass transportation systems. Section 2A5.2 relates to, among other things, terrorist attacks against mass transportation systems, 18 U.S.C. § 1992, interference with air navigation or airport security screening personnel, 49 U.S.C. §§ 46308, 46503, and interference with flight crewmembers and attendants, 49 U.S.C. § 46504. *See also* 18 U.S.C. §§ 32(a) & (b), 37. Smith argues that it makes no sense to place his offense in the same guideline as offenses involving terrorism or unruly passengers who have assaulted or actually interfered with airplanes' crewmembers, especially since § 39A does not require any showing of actual interference with an aircraft. *See* filing 49 at 3.

The Court finds that § 2A5.2 is sufficiently analogous. The Court agrees that Smith should not be treated the same as a terrorist. But his offense is analogous to drunken air passengers who become disruptive and interfere with crewmembers. *See, e.g.*, *United States v. Clarkson*, 148 Fed. Appx. 437 (6th Cir. 2005); *United States v. Vickaryous*, 74 F.3d 1250 (10th Cir. 1996); *United States v. Jenny*, 7 F.3d 953 (10th Cir. 1993). Congress has determined that interference with a crewmember is a serious offense, as evidenced by the possibility of 20 years'

imprisonment (and up to life, if a dangerous weapon is used). § 46504. A single intoxicated and unruly passenger may not be *likely* to cause a catastrophe. But with the number of lives at stake aboard the average commercial aircraft, there is no reason to accept any unnecessary risk. Likewise, there is no reason to suffer the possibility that people who point laser pointers at airplanes, for whatever reason, may distract pilots or interfere with their vision or concentration. Smith's offense is less egregious than, for example, punching an airplane captain. *Vickaryous,* 74 F.3d at *2. But it would be difficult to come up with a more analogous offense.[1] The Court will therefore apply § 2A5.2 when computing Smith's advisory Guidelines sentencing range.

3. Smith next objects to the base offense level of 18 used in the presentence report. The base offense level under § 2A5.2 is 9, but increases to 18 if the offense involved recklessly endangering the safety of an aircraft. § 2A5.2(a)(2). Smith argues that the evidence fails to show recklessness on his part. The government counters that not only was Smith reckless, but that the Court should apply a base offense level of 30, for intentional endangerment of an aircraft. § 2A5.2(a)(1). The Court tentatively finds that Smith's objection has merit.

The Court does not doubt that Smith endangered the safety of an aircraft. Endangerment does not require evidence of actual harm, but only a threatened or potential harm. *United States v. Gonzalez,* 492 F.3d 1031, 1036 (9th Cir. 2007). At trial, the pilots of the police helicopter illuminated by Smith's laser pointer testified that when the laser struck the helicopter's windshield, the light refracted and filled the cockpit, which was briefly disorienting. This risked distracting the pilots, the potential harm of which is obvious. However, in order for the enhancement to apply, Smith must also have been reckless.

Recklessness is not defined by § 2A5.2 or its accompanying comments. Courts have therefore looked to the definition of reckless used by the guideline for involuntary manslaughter, § 2A1.4. *See, e.g., Gonzalez,* 492 F.3d at 1035. Under that guideline, "reckless" is defined as a situation in which the defendant was "aware of the risk created by his

---

[1] The Court also notes that the Sentencing Commission has recommended to Congress that the Guidelines be amended to refer § 39A offenses to § 2A5.2. U.S. Sentencing Commission, *Amendments to the Sentencing Guidelines*, 39 (April 30, 2013) (available at http://www.ussc.gov/Legal/Amendments/ Reader-Friendly/20130430_RF_Amendments.pdf) (last accessed July 11, 2013).

- 3 -

conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4, app. n.1. Certainly, Smith's conduct amounted to a gross deviation from the appropriate standard of care. But the evidence fails to show that Smith was aware of the risk created by his conduct.

When Smith was apprehended by police, he admitted to shining the laser pointer at the helicopter. But he also stated that he believed the helicopter was 2 to 4 miles away, and he did not believe the laser pointer's beam would actually reach it, nor that it could create a safety hazard. PSR, ¶ 11. While this statement is entirely self-serving, it is also the only evidence on Smith's state of mind. It is not enough that Smith was aware, or should have been aware, that the laser pointer's beam could (and did) reach the helicopter. To show recklessness, Smith must not only have been aware of facts from which the inference could be drawn that a risk of harm existed, Smith himself must also have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Anyone with an ounce of sense would have realized the risk posed by shining a laser pointer at a helicopter—and that lack of sense is precisely why the Court is not convinced that Smith's conduct was reckless within the meaning of the Guidelines.

That said, Smith's conduct was, at best, grossly negligent. For that reason, the Court believes that a slight upward variance may be warranted, to reflect the seriousness of the offense and to deter similar conduct from other misguided laser pointer enthusiasts. The parties should be prepared to address this at the sentencing hearing.

4. Smith next renews his objection on double jeopardy grounds, arguing that a $9,000 penalty he has been ordered to pay by the Federal Aviation Administration (FAA) amounts to a criminal penalty for the same conduct as his offense of conviction, such that he has been subjected to multiple punishments for the same offense. The Court previously rejected this argument, because the Federal Aviation Regulation that Smith violated, 14 C.F.R. § 91.11, is a distinct offense from 18 U.S.C. § 39A under the "same-elements" test of *Blockburger v. United States,* 284 U.S. 299 (1932). *See* filing 49; *see also United States v. Dixon,* 509 U.S. 688, 696 (1993).

> Section 91.11 provides that "[n]o person may assault, threaten, intimidate, or interfere with a crewmember in the performance of the crewmember's duties aboard an aircraft being operated." To show a violation of § 39A, the government must prove that the defendant knowingly aimed the beam of a laser pointer at an aircraft, but need not show that this resulted in interference, an assault, or a threat. A violation of § 91.11, on the other hand, requires interference, or an actual threat or assault. But the government need not show a laser pointer was used. Each provision contains an element not contained in the other; therefore, § 39A and § 91.11 are not the same offense for double jeopardy purposes.
>
> Smith now focuses his argument on the term "assault." Section 91.11 does not define assault, but the term is generally understood to include attempts to commit a battery, even where there is no physical contact. *See United States v. Osborne*, 164 F.3d 434, 439 (8th Cir. 1999). So, Smith argues, proving a violation of § 39A necessarily proves a violation of § 91.11, because aiming a laser pointer at an aircraft amounts to an attempted battery. Smith's reasoning is not sound. A violation of § 39A requires only that an aircraft was struck by the beam of a laser pointer—the statute is violated even if no crewmember was ever aware of the strike.
>
> When the Court previously considered Smith's double jeopardy challenge, the FAA had assessed, but not yet imposed any penalty. Since then, the FAA has issued a "Final Notice of Civil Penalty" and sent Smith a "Bill for Collection" for $9,000. But this changes nothing in the Court's analysis. Even if FAA's fine is so severe that it should be considered punitive for purposes of the Double Jeopardy Clause, *see Hudson v. United States*, 522 U.S. 93, 99 (1997), it would not constitute additional punishment for the same offense. This objection is overruled.

5.  Finally, Smith objects to the government's claim that the beam of his laser pointer struck the Southwest Airlines plane "around its cockpit." PSR, ¶¶ 12, 14. Smith points to a report filled out by the plane's crew, which stated that while a laser illuminated the side of the aircraft, the cockpit was not illuminated. The Court will resolve this objection at the sentencing hearing and determine what effect, if any, this relatively minor factual dispute has upon sentencing.

6. Smith has also moved for a downward departure under U.S.S.G. § 4A1.3, on the basis that his Criminal History Category overstates the seriousness of his criminal record. Filing 98. Based on his numerous convictions for, among other things, theft and drug possession, PSR, ¶¶ 32–39, Smith has been placed in Criminal History Category V. He argues that his convictions are for minor, nonviolent offenses, and were caused by his methamphetamine addiction, and that placing him in the second-highest category overstates the seriousness of his record.

    The Court is not persuaded. While Smith's convictions are for nonviolent offenses, the number of convictions shows a consistent disrespect for, and unwillingness to conform to, the law. Certainly, it is expected that Smith will eventually overcome his addiction, and that his likelihood of reoffending will someday be lower than suggested by his numerous convictions. But Smith has not demonstrated that his criminal history is outside the heartland of cases such that a departure is warranted. *See United States v. Washington,* 467 F.3d 1122, 1125 (8th Cir. 2006). The Court's tentative finding is that this motion for downward departure is without merit.

7. Smith has also moved for a variance from the Guidelines sentencing range. Filing 99. He first argues that § 2A5.2 is an unreliable guideline, lacking an empirical guidance, and is nothing but a broad "catch-all" provision "for 'things related to planes.'" Filing 100 at 4. Smith urges the Court to exercise its discretion under *Kimbrough v. United States,* 552 U.S. 85 (2007), to categorically reject the guideline. The Court acknowledges its discretionary authority to vary based exclusively on a policy disagreement with a particular guideline, *Kimbrough,* 552 U.S. at 109, but is not persuaded to do so in this case. This argument is little more than an elaboration on Smith's previous objection to application of § 2A5.2, and the Court declines Smith's invitation to reject the guideline for the reasons stated above. Lastly, Smith argues that a variance is appropriate based on the factors set forth in 18 U.S.C. § 3553. The Court will resolve this aspect of Smith's motion for variance at the sentencing hearing.

8. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraphs, the parties are notified that the Court's tentative findings are that the PSR is correct in all respects.

9. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

10. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the PSR may be relied upon by the Court without more.

11. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 12th day of July, 2013.

BY THE COURT:

*/s/ John M. Gerrard*
John M. Gerrard
United States District Judge